[Crim. No. 6846. In Bank. Nov. 16, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. STANLEY WILLIAM FITZGERALD, Defendant and Appellant.

Perry M. Farmer, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, J.—Defendant was convicted of murder in the first degree, and the jury fixed the penalty at death. Defendant's motion for a new trial was denied. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)

In a San Francisco bar on the evening of August 2, 1960, defendant overheard M. J. Young and George Bonn, the deceased, discuss a possible trip to Reno, Nevada, to gamble. He offered to drive them there, and they left San Francisco the following morning in a car driven by defendant that he had obtained from a friend.

Several miles east of Truckee they left the main highway. Defendant testified that he suggested the detour to show the other two men a good deer hunting area. Young testified that defendant said he wanted to find a certain ranch to see a prospective purchaser of a tractor.

Young's testimony and defendant's are in sharp conflict as to what happened after they finally stopped. According to Young, defendant took a .22 caliber pistol from the glove compartment of the car, forced Bonn and Young to remove their trousers, and then rifled their pockets. Several hours later, as defendant was making ready to leave the scene of the robbery, Bonn struck him from behind with a whiskey bottle, and Young attempted to seize the gun. Defendant, dazed but not unconscious, shot Young in the hand and thigh and shot Bonn several times. Bonn died as a result of the bullet wounds.

According to defendant, all three men did some target shooting with the pistol during the journey over the side roads. After making the last stop, Bonn proposed that the three go swimming. Young and Bonn got undressed, and defendant began to disrobe. Young took some pills that he said were "better" than whiskey and offered one to defendant. Both Bonn and Young made homosexual advances that defendant rejected. As he was showing Young the proper way to load the pistol, something struck defendant and knocked

him out. When he regained consciousness, defendant saw that Bonn had been shot to death and that Young had been wounded. Defendant offered no explanation for these circumstances other than that he might have done the shooting unconsciously. Young then suggested that the scene be staged to look like a robbery. He gave defendant all his valuables, including two checks. They removed Bonn's wristwatch. Defendant left for Reno after Young had indicated that he would tell the police that he and Bonn had been held up by two strangers. Young's incentive for the false story was to prevent police discovery of certain pills and other paraphernalia in his bag.

Defendant cashed the two checks in Reno by forging Young's signature. He then went by plane to Oakland, using the name William Boyd. He registered in an Oakland hotel as Morgan York. The next day he went by plane to Portland, using the name "M. York." He was apprehended in Portland on September 22, 1960, and was taken to the Nevada County jail. He and several other prisoners broke jail, but were recaptured.

Defendant contends that the court erred in refusing to give his requested instruction concerning criminal intent. This instruction, however, was given almost verbatim.[1]

██ Defendant contends that the court also erred in

---

[1]Defendant's requested instruction reads:

"An essential element of *the* crime of which the defendant is accused is intent, the law requiring that to constitute such a crime there must exist a union or joint operation of criminal conduct and criminal intent. However, this does not mean that one must intend all the consequences of his conduct, or that he must know that such conduct is unlawful, to be guilty of a public offense such as that charged *against the defendant in this case.* The intent to do the forbidden thing constitutes the criminal intent. The law requires that to be guilty of crime, one must intend the conduct that fits the description of the crime and must engage in that conduct knowingly and wilfully." (Italics added.)

The instruction given reads:

"An essential element of *each* crime of which the defendant is accused is intent, the law requiring that to constitute such a crime there must exist a union or joint operation of criminal conduct and criminal intent. However, this does not mean that one must intend all the consequences of his conduct, or that he must know that such conduct is unlawful to be guilty of a public offense such as that charged *in Count two of the indictment herein.* The intent to do the forbidden thing constitutes the criminal intent. The law requires that to be guilty of crime, one must intend the conduct that fits the description of the crime and must engage in that conduct knowingly and wilfully." (Italics added.)

The variation of the proposed instruction from that given appears from a comparison of the words in italics. Defendant's suggestion that the jury was misled by the reference in the instruction given to Count two of the indictment is without merit, inasmuch as the instruction expressly applied to "each crime of which the defendant is accused. . . ."

instructing the jury that it must either acquit defendant of the charge of murder or find him guilty of murder in the first degree. He reasons that the jury might conceivably have found him innocent of robbery but criminally responsible for Bonn's death, and that under proper instructions he might have been convicted of a lesser crime than murder in the first degree. This possibility was foreclosed, however, by the jury's verdict of guilty on the charge of robbery. There is no evidence in the record, as there was in *People* v. *Carnine,* 41 Cal.2d 384 [260 P.2d 16], that defendant formed the intent to commit robbery, if at all, only after the fatal shooting. Young testified that defendant killed Bonn during the course of the robbery. Defendant testified that there was no robbery. Accordingly, it is clear that in finding defendant guilty of both robbery and murder the jury necessarily determined that the killing was perpetrated during the commission of the robbery.

Defendant contends that the court erroneously admitted certain extrajudicial declarations made by him. Sheriff Wayne Brown testified for the prosecution on rebuttal that shortly after his arrest in Portland defendant had stated that he had forced Bonn and Young to disrobe and robbed them at gunpoint, but that he had been struck from behind and could not explain his victims' wounds. Defendant urges that it was improper to introduce this evidence through the testimony of the sheriff; that no foundation was laid that the declarations were voluntary; that it was improper to permit the introduction of the declarations in rebuttal; that the declarations could only be used to impeach defendant; and that the court erroneously instructed the jury with respect to the declarations.

The testimony of the sheriff was admissible. ▮ Oral confessions and admissions, not in writing and signed by the defendant, may be proved by the testimony of any one who was present and heard the declarations when they were made. (*People* v. *Luis,* 158 Cal. 185, 193 [110 P. 580]; *People* v. *Cokahnour,* 120 Cal. 253, 254 [52 P. 505]; *People* v. *Taylor,* 59 Cal. 640, 651; *People* v. *Ashcraft,* 138 Cal.App.2d 820, 828 [292 P.2d 676]; *People* v. *Thompson,* 133 Cal.App.2d 4, 9 [284 P.2d 39]; see also *Gray* v. *State,* 181 Md. 439 [30 A.2d 744]; McBaine, California Evidence Manual, § 858, pp. 291-292; 2 Wharton's Criminal Evidence, § 361, pp. 68-69.)

▮ Sheriff Brown was specifically questioned as to the conditions under which defendant made the declarations. There is ample evidence that they were voluntary. Defendant made no objection to their admission. Indeed, when Sheriff

Brown was questioned on this matter, counsel for defendant rejected the prosecutor's invitation to examine the sheriff as to whether defendant's declarations were voluntary. There is no merit in defendant's contention that no foundation was laid. (See *People* v. *Byrd*, 42 Cal.2d 200, 210 [266 P.2d 505].)

Although the prosecution should have introduced this evidence as part of its case in chief (see Pen. Code, § 1093; *People* v. *Carter*, 48 Cal.2d 737, 753 [312 P.2d 665]), it does not appear that the order of proof prejudiced defendant. There is no claim that there was any surprise, and even if an objection had been made, the trial court would not have abused its discretion by admitting the evidence in rebuttal. (*People* v. *Chessman*, 52 Cal.2d 467, 493 [341 P.2d 679].)

Furthermore, "defendant is mistaken in his contention that because the evidence of such statements was introduced after he had taken the stand it could be considered only to impeach defendant, not as proof of the People's case." (*People* v. *Chessman, supra,* p. 493.)

Defendant contends that the trial court erred in labeling his declarations a confession. The part of the instruction cited by defendant defines confessions. The remainder of the instruction, however, goes on to define admissions. The court did not "label" defendant's declarations; but left to the jury their classification, as well as the weight to be given them regardless of their classification.

Defendant contends that the court gave an inaccurate definition of a confession. A confession "leaves nothing to be determined, in that it is a declaration of his [defendant's] intentional participation in a criminal act." (*People* v. *Ferdinand*, 194 Cal. 555, 568-569 [229 P. 341].) An admission, on the other hand, is merely a recital of facts that "tend to establish guilt." (*People* v. *Schoon*, 177 Cal. 678, 683 [171 P. 680].) The court instructed the jury that to be considered a confession, a statement must be one "which, if true, discloses his [defendant's] guilt of that crime and excludes the possibility of a reasonable inference to the contrary." The court defined an admission as a declaration which, "by itself, is not sufficient, even if true, to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence." The court was correct in instructing the jury with respect to both confessions and admissions, for defendant's declarations might properly have been regarded as confessions to the crimes of robbery and

assault with a deadly weapon, but merely admissions to the charge of murder.

 Defendant correctly points out that the court erred in instructing the jury that an admission could be considered, even if involuntary. (*People* v. *Trout*, 54 Cal.2d 576, 586 [6 Cal.Rptr. 759, 354 P.2d 231]; *People* v. *Atchley*, 53 Cal.2d 160, 170 [346 P.2d 764].) This error was not prejudicial, however, for there is no substantial evidence in the record to support defendant's contention that the declarations were involuntary. Sheriff Brown testified that defendant's answers were given freely and voluntarily. Defendant's testimony does not substantially contradict that of the sheriff:

Q. Were you forced to answer their questions? A. No.

Q. Was everything you said free and voluntary? A. Yes.

Q. They didn't threaten you with anything? A. In a way.

Q. Pardon me? A. In a way.

Q. What did they threaten you with if anything? A. They said if I would go along and play ball with them they would make the trip as easy for me as possible, I wouldn't be handcuffed on the train or if we went on a plane I wouldn't be handcuffed. I said, "You would have to know me better." I said, "You would know I have never been in any violence."

Q. They didn't promise to do this on the basis of any particular story that you would tell? A. They inferred that I would,— how I answered the questions was how I would go back.

On redirect examination, defendant said: "I had the choice of two, of answering some of these questions and going on the train or by plane." Sheriff Brown testified that the discussion concerning the mode of travel from Portland to Nevada City was wholly unrelated to defendant's answers to the questions put. In view of the testimony of both defendant and Sheriff Brown that the declarations were free and voluntary, it is not reasonably probable that the jury accepted defendant's contention that they were induced by the discussion as to the mode of travel.

Defendant contends that misconduct of the prosecuting attorney deprived him of a fair trial. A number of instances are relied upon to support the charge of misconduct. In only one instance, however, did defendant object. When the prosecutor referred to defendant's having "stolen" the car for the trip to Reno, defendant properly objected. The court's correction of the prosecutor and indication to the jury that the reference was improper precluded any prejudice therefrom.

 Defendant complains that during his cross-examina-

tion of defendant, the prosecutor implied that defendant had lied to the owner of the car concerning the presence of the murder weapon in the glove compartment; that the prosecutor implied that defendant had stolen the gun from another friend; and that by his statements on several occasions, the prosecutor evinced a personal dislike for or distrust of defendant. Any impropriety in these instances could have been cured, upon timely objection, by retraction of the prosecutor or instruction of the court. (See *People* v. *Berryman*, 6 Cal.2d 331, 337 [57 P.2d 136]; *People* v. *Lyons*, 50 Cal.2d 245, 262 [324 P.2d 556]; *People* v. *Avery*, 35 Cal.2d 487, 493 [218 P.2d 527]; *People* v. *Caetano*, 29 Cal.2d 616, 619-620 [177 P.2d 1].)

There is no merit in defendant's contention that there was error because the prosecutor used the power of his office to secure a daily transcript, whereas defendant was not provided with such a transcript. Defendant was given a transcript as soon as he requested it.

Defendant complains that there were conversations between jurors and spectators and members of the sheriff's office before the submission of the case to the jury. The burden of demonstrating improper influence and prejudice is upon the defendant. (*People* v. *Erno*, 195 Cal. 272, 283 [232 P. 710].) Defendant does not know what the alleged conversations were about, and it cannot be presumed that they related to the trial or that the jurors were influenced by them. (*People* v. *Dunne*, 80 Cal. 34, 36 [21 P. 1130].)

The judgment and the order denying defendant's motion for a new trial are affirmed.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied December 13, 1961.