[Crim. No. 1698.    Fourth Dist.    July 26, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. HERBERT DONALD POLITE, Defendant and Appellant.

Richard I. Singer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and C. Anthony Collins, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, J.*—The defendant was convicted of first degree robbery and of simple kidnapping.

The victim, Kenneth V. Rice, was a retired Navy commander, who incidentally owned an insurance agency, but who, for reasons best known to himself, agreed to accept employment as a taxicab driver for the Martin Cab Company at the request of the company's owner, an old friend of Mr. Rice. This temporary occupation for Mr. Rice resulted in a most uncomfortable experience for him. He had commenced his employment as a cab driver at about 6 p.m. on the night before the crime. In the early morning of the following day, he was parked at the cab stand on the corner of Fourth and Plaza in San Diego when three male Negroes got into the taxi, one, Wilkerson, in the front seat and the appellant, Herbert Donald Polite, and another man in the back seat.

---

*Assigned by the Chairman of the Judicial Council.

Wilkerson gave Mr. Rice the address of 3487 "J" Street as their destination, and Rice proceeded toward that point. When the taxicab reached the area of 35th and "J" Streets, Wilkerson told him to pull over to the curb where he asked what the fare was. When Mr. Rice leaned forward to consult the meter, Wilkerson grabbed him, threw him back into the seat and he was then struck on the head six or eight times causing extensive lacerations, which bled profusely. In the course of the melee, the defendant, Polite, put his arm around Rice's neck and proceeded to choke him. Wilkerson asked Rice where his money was and then took $30 in bills and $12 to $16 in change from his pocket, together with his automobile license, identification card, his pens, and his wrist watch.

After the robbery, Wilkerson pulled Rice over on the seat and told appellant to drive the taxicab. Mr. Rice was losing a considerable amount of blood, some of which fell on Wilkerson's clothing and some on the seat and on the floor. Appellant got into the front seat and, after "tripping the meter" to put out the light in the cab, drove the vehicle. In the meantime, Mr. Rice's arms were tied with his hands behind him. After some little time, the cab crossed Wabash, eastbound on National, and, in the area around 35th and 36th Streets, the vehicle was stopped; Wilkerson jerked Mr. Rice out of the car and slammed his body up against the wall of a building, telling him to stay there. Wilkerson then got back in the car which proceeded east on National.

John Nason, who was walking in the area, assisted Rice to a telephone booth where he called the police. When the police vehicle arrived, Rice gave descriptions of his assailants to the officers and asked them to take him to a hospital. After a few minutes the police asked Rice to take a look at the two suspects who had been taken into custody. Rice, then only a few feet from the defendants, was able to observe and identify the two while they were standing against a building at the order of the arresting officers. Mr. Rice's head wounds were staunched at the Naval Hospital, and he was then removed to his home at about 9 a.m. Before noon on the same day, he was taken to the police department and there he made a detailed statement of the crime and again identified the two Negro defendants, picking them out of a lineup.

Victor Acosta, manager of a grocery store in the 3600 block of National Avenue, saw three Negro men getting out of a

taxicab between 37th and 36th Streets on Boston in the early morning hours on the day of the crime.

Robert Jordan, a San Diego police officer, was patrolling the Logan Heights area alone in a police car, when, at about 5:30 a.m. on the day of the crime, he received an "all units" radio dispatch ordering the apprehension of three male Negroes involved in the armed robbery of a cab driver in the 3500 block of National Avenue. The dispatch contained a tentative description of the three men. While he was traveling south on 37th Street at about 5:50 o'clock in the morning, Officer Jordan saw the two male defendants walking northerly on 37th Street. His car and another police automobile pulled up to the two men, and both officers approached them. Officer Jordan noted that there was blood on the trousers of one of the men and that the two resembled, generally, the description given in the broadcast. Appellant told the officer that he and his companion had just gotten out of a car in which they had hitchhiked from Tijuana. The two were arrested and taken in separate vehicles to the 3500 block on National where they were placed against a building; it was at that time that Mr. Rice saw them and identified them as two of the three men who had been in the taxicab with him.

Officer Humphrey of the San Diego Police Department had a conversation with the appellant at about 1:20 p.m. on the same day in the interrogation room at the city jail. At that time, the appellant told Officer Humphrey that on the preceding night he had gone to Tijuana with Wilkerson and gotten drunk and was unable to remember events at the time of the alleged crime.

There is no contention on the appeal that the evidence was technically insufficient to warrant a conviction of the defendant. This result obviously was principally due to the positive identification of the appellant by Mr. Rice. As above stated, the victim not only recognized the defendants on two occasions shortly after the crime, but he was absolutely certain of the identification in his testimony at the trial. There were, indeed, several elements of testimony which, considered alone, would tend to prove innocence, but on appeal we must accept the finding of guilt made by the jury, as it is supported by substantial evidence.

The appellant makes three major contentions for reversal: first, he argues that the use in evidence of statements made by the defendant to Officer Humphrey resulted in reversible

error under the rule enunciated in *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; secondly, he claims that the trial court committed prejudicial error by refusing to permit his counsel to read aloud from books during his argument to the jury; thirdly, he avers that the trial court erred prejudicially by allowing the prosecutor too much latitude in his closing argument and by denying the defense request for the right to additional argument in sur-rebuttal.

The Attorney General concedes that if a confession or the admission of an element constituting an essential requisite of proof were involved, the *Dorado* rule would require a retrial. He points out that the admission in evidence of the confession of a defendant is reversible error when at the time of the confession "(1) suspicion has focused upon the defendant, (2) he is in custody, (3) is subjected to interrogation lending itself to the elicitation of incriminating statements, and (4) has not effectively waived his rights to an attorney and to remain silent." All of these elements are present here: the appellant was under arrest, and suspicion most certainly had focused upon him and his companion; the police, in their investigation, did interrogate the defendant in the hope that they would secure incriminating statements, and it is not claimed that the defendant had been warned that he did not have to talk and that he could have an attorney present at the questioning. But the Attorney General justifies the receipt in evidence of appellant's statements on the ground that Polite did not confess or make an admission of an essential fact.

The *Dorado* opinion, *supra*, 62 Cal.2d 338, 356, contains the following language: ". . . Although under some circumstances the introduction into evidence of statements obtained from a defendant during police interrogation in violation of his right to counsel and his right to remain silent may constitute harmless error, we are convinced that the error is necessarily prejudicial when the statements are confessions . . . ."

Here, the defendant did not make a confession; a confession is a statement which admits the crime and leaves no room for any inference other than that of defendant's guilt. (*People* v. *Fitzgerald*, 56 Cal.2d 855, 861 [17 Cal.Rptr. 129, 366 P.2d 481]; *People* v. *Brubaker*, 53 Cal.2d 37, 45-46 [346 P.2d 8]; *People* v. *Swayze*, 220 Cal.App.2d 476 [34

Cal.Rptr. 5]; *People* v. *Ford,* 200 Cal.App.2d 905 [19 Cal. Rptr. 758]; *People* v. *Teitelbaum,* 163 Cal.App.2d 184 [329 P.2d 157]; *People* v. *Speaks,* 156 Cal.App.2d 25 [319 P.2d 709].)

█ At most, appellant's statement was a declaration that he did not know where he was at the time of the commission of the crimes, and, because he had been drinking, he was suffering from what a more lettered person might term alcoholic amnesia; the statement cannot be construed as an acknowledgment of any offense. █ In appellant's brief, the portion of the examination of the witness, Officer Humphrey, which was objected to and quoted is as follows: " 'He [Polite] was then told all stories have two sides and that we were willing to listen to his, and he was again told that the victim—there was no question in the victim's mind, that he had identified he and Wilkerson as the men that had robbed him. And Polite stated, ''I don't think the man would lie. I don't remember.''

" 'He [Polite] was then asked if he had driven a cab last night or early this morning, and he said, ''I don't remember, I don't think so. I don't think the man would lie. I must have been there. It just doesn't make sense.'' ' "

On cross-examination by the defense attorney, the following correction took place at the instance of the defense: "Q. . . . As I recall your testimony from your recollection, you stated that Mr. Polite said, after being confronted with the identification by Mr. Rice, 'I must have been there, I don't think he would lie.'

"Now, I am asking whether the complete statement wasn't, 'If the man says I was there, I must have been there, I don't think he would lie.'?

"A. Yes, that is—'If the man says I was there, I must have been there. I don't think he would lie.'

"Q. And he had, in fact, denied in fact robbing a cab that night, did he, did he not? A. He—at one time he said, 'I don't remember robbing a cab. I didn't rob a cab.' "

He was also asked the following question by the defense attorney.

"Q. . . . Did either Mr. Wilkerson or Mr. Polite make a confession to you of their guilt to this robbery? A. No, sir."

It will be seen that the statement on the part of the defendant in effect passed upon the appearance of the victim, whom he had seen after the alleged crime, as one who at least

believed he was telling the truth. There was no concession on the part of the defendant that he had committed a crime or had taken any part in the attack upon Mr. Rice. He did not concede anything other than that Mr. Rice appeared to be an honest man in his statements, which may have been mistaken. The People are, therefore, correct in maintaining that there was not only no confession, but no essential admission, and that there was no prejudicial error. (See *People v. Herrera,* 232 Cal.App.2d 558, 559 [43 Cal.Rptr. 12] (disapproved on another point in *People v. Perez,* 62 Cal.2d 769, 776 [44 Cal.Rptr. 326, 401 P.2d 934]); *People v. Herrera,* 232 Cal. App.2d 561, 563 [43 Cal.Rptr. 14] (disapproved on another point in *People v. Perez,* 62 Cal.2d 769, 776 [44 Cal.Rptr. 326, 401 P.2d 934]); *People v. Ulibarri,* 232 Cal.App.2d 51, 55-56 [42 Cal.Rptr. 409]; *People v. Campbell,* 232 Cal. App.2d 712 [43 Cal.Rptr. 71]; *People v. Garner,* 234 Cal. App.2d 212, 221 [44 Cal.Rptr. 217]; *People v. Ghimenti,* 232 Cal.App.2d 76, 82-84 [42 Cal.Rptr. 504]; *People v. Finn,* 232 Cal.App.2d 422, 426-429 [42 Cal.Rptr. 704].)

When he was addressing the jury, counsel for the appellant attempted to read from certain books which he apparently waved about with a great flair, and in a manner to which the trial judge took exception as not being consonant with the essential dignity of presentation required in a courtroom. The judge stopped counsel from reading from these books, and said: ". . . You are not entitled to embellish [your argument] by waving around paperbacks with inflammatory statements on them such as this 'Not Guilty' by this New York lawyer. . . ." And, also: ". . . you have to do it in a manner consistent with propriety and good judgment."

There seem to be two considerations involved: the first is the question whether the court has the duty to see to it that the proceedings at a trial go forward in a proper and lawyer-like manner, and, secondly, whether it is permissible for counsel to read from books and newspapers in his argument. A third question which, it seems to us, is not directly involved in the present controversy, is whether it is permissible for a lawyer to refer to other cases and instances, or even to the viewpoints of investigators and scientists with respect to human experience, in the course of his argument to the jury.

It is, of course, always the duty of a trial judge to make certain that a lawyer does not pass the limits of proper

demeanor in carrying forward his client's defense; in this respect counsel on both sides must refrain from grossly inflammatory actions. There can be no detailed handbook rules with respect to these matters. Everyone, including the trial judge, knows the limits beyond which a lawyer should not trespass. For example, the use of profanity except in quotation from evidence in the record, the employment of shouting to an excessive degree, an indulgence in acrobatics, or the singing of songs—all such things might well exceed permissible presentation of a client's case. The courtroom is not a circus; the trial judge owes a duty to see that proper demeanor is maintained.

With respect to reading from books, there is a practically universal rule that such conduct is not permitted, although there may be minor exceptions. In the taking of evidence it is improper to attempt to use books during direct examination, or in cross-examination unless an expert witness testifies that he has founded an opinion wholly, or in part, upon a specific work. In the latter case, it is entirely proper to use the book in cross-examination. (*People* v. *Wheeler,* 60 Cal. 581 [44 Am.Rep. 70].) Except in that instance, the use of printed books as evidence, or in cross-examination, would lead to major difficulties, chiefly because the opinions of the authors would be thus brought before the jury without the possibility of cross-examination by the opposing side.

The same objection would obviously apply to the proscribed reading of books to a jury during the arguments of counsel. If this were permitted, a jury would often have the utmost difficulty in distinguishing between the evidence of experts, subject to cross-examination, and the opinions of the authors of the works which were read. In addition, there is, on the part of the public, a widespread deference to books, particularly those with vellum covers. This deference, sometimes originating in the subconscious, is perhaps a survival of the respect paid to clerks, who could read and write, during medieval days. In any event, the reading from printed accounts is not a practice to be permitted, and this negative rule of action is applicable to papercovered reprints and clippings from newspapers as well as to handsomely bound volumes. The court was, therefore, correct in admonishing counsel against reading from books during his argument.

We believe that counsel's complaint refers to the prevention by the trial court of a reading from books during argument, rather than a limitation upon the subject matter of

counsel's discussion of what might be referred to in the books. We share the belief of the judges in cases cited by appellant that a wide latitude should be afforded counsel in the argument of cases. ▮ It is obvious that during his address to the jury, an attorney must not purport to give evidence in addition to that previously received during the trial, but aside from this rule, the widest freedom should be afforded counsel in the argument of a case. A jury trial obviously has two aspects; one is the technical side of the lawsuit, which involves both the facts and the legal principles applicable to the situation presented; the other aspect, which is seldom stressed, or even referred to, in treatises on litigation, is the mental makeup of the finders of fact and the illumination given their faculties by their experience and common sense. ▮ All 12 of the people in the jury box have lived a practical, and usually a fairly long, life in the community; they have had a variety of observation and instruction from the time that they were children until they have reached whatever age they presently enjoy, and a lawyer arguing his case should be entitled to cover the whole range of human experience in asking the jury to decide in favor of his client. This should properly include not only the sayings of famous men, but illustrations taken from life, or from books, showing the actions and thoughts of human beings, other than the parties and their witnesses, under various types of pressure and stress. To limit a lawyer's voice to a bare monotone, or his intellectual plea to a somber discussion of the evidence and the law, without permitting him to range over the field of human experience, would be to cripple the best of advocates and often to reduce a vibrant trial to a dry and inhuman inquiry. It is our belief from the record that there was no such restriction of subject matter in the present case.

▮ In his own address to the jury, appellant's counsel invited the part of the final argument made by the district attorney to which objection is made. It is true that appellant made an adequate record asking that the district attorney be restricted to a discussion of his own case, and later by requesting more time to answer the People's closing argument. However, the trial court correctly stated: ". . . Your opening sentence, Mr. Singer, in your argument was to this effect. 'There is no evidence of defendant's guilt before the jury except the testimony of Mr. Rice.'

"With that statement, you have allowed the District At-

torney to state what the other additional evidence was. Had you not made such a statement, I believe probably your motion would be proper, but you did state there was no evidence. Having made that, the District Attorney is entitled to tell the jury what additional evidence there is besides the testimony of Mr. Rice. The motion is denied. . . ."

In *People* v. *Griffin,* 60 Cal.2d 182, the Supreme Court said at page 192 [32 Cal.Rptr. 24, 383 P.2d 432] : ". . . It is not misconduct for a prosecutor to reply to defense arguments as long as his comments are based on the record, as were these. [Citing cases.]"

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.