[Crim. No. 3851.   First Dist., Div. Two.   July 17, 1961.]

THE PEOPLE, Respondent, v. JAMES M. TYLER,
Appellant.

Henry C. Clausen, Jr., under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John L. Burton, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—Defendant, James M. Tyler, appeals from a judgment entered on a jury verdict finding him guilty of the possession of heroin in violation of section 11500 of the Health and Safety Code, and from the order denying his motion for a new trial. He argues that the judgment must be reversed because the officers obtained the heroin by an unlawful search and seizure, (1) his arrest was illegal as a matter of law; (2) there was such a conflict in the evidence relating to the facts surrounding the arrest that the question of the existence of probable cause should have been submitted to the jury under proper instructions.

The record reveals the following facts: About 11 a. m. on October 6, 1959, Officers Toomey and Higgins of the Narcotics Detail of the San Francisco Police Department were driving east on Eddy Street in an unmarked police car. When they saw the defendant (whom they had known previously) and Noel Adams (then unknown to the officers) walking east on the north side of the street in the 1400 block, they stopped the car, called the defendant by name, and told him to stop because they wanted to talk to him. The defendant, who was about 40 feet away looked at the officers, then speeded his pace and ran into the entrance of the Eddy Hotel which was a short distance away. Toomey followed the defendant into the hotel while Higgins pursued Adams down the street.

Toomey saw the defendant approach the hotel desk and lunge over the desk with one hand extended. When the hotel clerk pushed him away from the desk, the defendant turned and made a motion toward his mouth, and then started to leave the hotel.

Toomey called defendant by name, saying: "Police. What did you put in your mouth? Open your mouth." There is conflicting evidence as to how the scuffle between the defendant and Toomey began. Toomey testified that the defendant pushed him aside and started for the door and he then grabbed him. The defendant and the desk clerk testified that the defendant did not hit or push Officer Toomey until after the latter grabbed the defendant and attempted to force him to disgorge something from his mouth. While the two were scuffling, Higgins returned. The defendant was subdued with his help, handcuffed and pat-searched. No narcotics were found.

Thereafter, the defendant was taken to the Hall of Justice and told that he was being arrested for battery and resisting arrest. Before being booked, the defendant was taken to room

403 and searched again. At this time, a balloon containing heroin was found in his left front pants pocket; his arm revealed fresh puncture marks. He was then booked on suspicion of possessing heroin, battery and resisting arrest.

The defendant testified at the trial that he knew that the people who called out to him from the car were police officers and they were after him as they wanted him to work for them; that on the date in question, he did not have any fresh needle marks in his arm and was not addicted to narcotics. He denied possession of the balloon and stated that the two officers framed him because he would not work for them as an informer. The police officers indicated they had made such an offer to the defendant on a previous occasion. The record of the preliminary hearing indicated that the arrest was made without warrant and was based entirely on the defendant's conduct on the morning of October 6, 1959, as there was no information from a reliable informer.

The first argument on appeal is that there was no reasonable cause for arrest as a matter of law.* █ The arrest was made without a warrant and under such circumstances the burden rests on the prosecution to show proper justification (*Badillo* v. *Superior Court*, 46 Cal.2d 269 [294 P.2d 23]). █ The general rules regarding reasonable or probable cause for arrest are set forth in *People* v. *Ingle*, 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577], where our Supreme Court said:

". . . There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]. . . . █ Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] █ Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.] It is not limited to evidence that would be admissible at the trial on the issue of guilt. [Citations.] The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. [Citation.]

---

*The matter was properly raised initially by a motion under section 995 of the Penal Code and at the trial.

". . . Unless it can be said that prudent men in the position of these officers knowing what they knew and seeing what they did would not have had reasonable cause to believe and to conscientiously entertain a strong suspicion that Ingle was violating or had violated the law, the arrest should be held lawful." (Pp. 412-414.)

The question here is whether the defendant's refusal to stop when the officers called his name was a sufficiently suspicious circumstance, which, when coupled with the subsequent gesture to his mouth, constituted reasonable and probable cause.

A thorough review of the decisions in this state reveals that the courts have sustained arrests without warrants where under suspicious circumstances, the individual arrested performs a furtive act or movement in the presence of the arresting officer (*Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36]; *People* v. *Vegazo*, 191 Cal.App.2d 666 [13 Cal.Rptr. 22]; *People* v. *Pendarvis*, 178 Cal.App.2d 239 [2 Cal.Rptr. 824]; *People* v. *Poole*, 174 Cal.App.2d 57 [344 P.2d 30]; *People* v. *McMurray*, 171 Cal.App.2d 178 [340 P.2d 335]; *People* v. *Cantley*, 163 Cal.App.2d 762 [329 P.2d 993]; also *cf. People* v. *Aguilar*, 191 Cal.App.2d 887 [13 Cal.Rptr. 121]; *People* v. *Quong*, 189 Cal.App.2d 318 [11 Cal.Rptr. 170]; *People* v. *Fitch*, 189 Cal.App.2d 398 [11 Cal.Rptr. 273]).

■■■ As it is the information known to the police officers or the suspicious circumstances which turn an ordinary gesture into a furtive one, it is equally clear in this state that in the absence of information or other suspicious circumstances, a furtive gesture alone is not sufficient (*cf. Gascon* v. *Superior Court*, 169 Cal.App.2d 356 [337 P.2d 201]); likewise unusual conduct on the part of the person arrested unless the officers have prior information or there are other suspicious circumstances, is also not sufficient probable cause for a legal arrest (*People* v. *O'Neill*, 187 Cal.App.2d 732 [10 Cal.Rptr. 114]; *People* v. *Amos*, 181 Cal.App.2d 506 [5 Cal.Rptr. 451]; *People* v. *Harvey*, 156 Cal.App.2d 516 [319 P.2d 689]; *People* v. *Schraier*, 141 Cal.App.2d 600 [297 P.2d 81]; *People* v. *Goodo*, 147 Cal.App.2d 7 [304 P.2d 776]; *People* v. *Brown*, 45 Cal.2d 640 [290 P.2d 528]; *People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531]).

In *People* v. *Pendarvis, supra,* a police officer in uniform saw the defendant and a companion walking about 12:15 a. m.; he drove his police car into a driveway across the sidewalk

behind them and called the defendant by her first name. The defendant turned, looked at the officer, stepped off the sidewalk, started to cross the street, and made a motion towards her mouth with her hand. The officer saw a white object leave her hand and go toward her mouth. The officer ran to the defendant and after a tussle, the white object, which was later determined to be a folded paper containing heroin, fell to the pavement and was picked up by the officer. In answer to a contention similar to that raised here, this court said at pages 240 and 241:

"Her contention would have merit if she had been arrested at the moment the policeman called her name, because the evidence shows, up to that time, no reasonable cause to believe that she had committed or was committing an offense. (*People v. Brown*, 45 Cal.2d 640 [290 P.2d 528].) It is not contended that the mere calling of her name by the officer constituted an arrest. There is no suggestion that the officer detained, restrained or in any way hindered her. But when she then turned and saw the officers and their car, she altered her course and hastily threw into her mouth a white object the size of a bindle of heroin. This gave the officer reasonable cause to believe that a public offense was being committed in his presence. The ensuing arrest and the seizure incident thereto was valid. (*People v. Poole*, 174 Cal.App.2d 57 [344 P.2d 30].)"

Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant to a reasonable man the charge is true (*People v. Pendarvis, supra*, p. 239). The test is whether the facts as they appeared to the officers at the time of arrest were such that the person should be held to answer (*People v. Murphy*, 173 Cal.App.2d 367, 377 [343 P.2d 273]).

We think the same reasoning applies in the instant case, although the officers were not in uniform and no narcotics were found immediately after the defendant's gesture to his mouth. The defendant admitted knowing that the men who called his name were police officers. Thus, his conduct in speeding up and running into the hotel after they called his name was flight, or at the very best, a very suspicious circumstance. The initial search of the defendant was a cursory "pat-search" for weapons which would not immediately reveal an object as small as a balloon. We think the defendant's conduct in gesturing toward his mouth constituted the kind of furtive and suspicious conduct which, combined with his pre-

vious flight when he saw the officers and the officers' knowledge of the defendant [i.e., his four admitted prior convictions of which two were for narcotics offenses], afforded the officers reasonable belief that he had some contraband in his possession (*People* v. *Vegazo, supra*; see also *People* v. *Aguilar, supra*, p. 890, which indicates that under the proper circumstances hypodermic marks can constitute probable cause).

Therefore, we can only conclude that the arrest was lawful. ▮ The search was made as an incident to a lawful arrest and was reasonable (*People* v. *Muniz*, 172 Cal.App.2d 688 [342 P.2d 53]). The fact that the defendant was not arrested for any offense with reference to narcotics until after the search in room 403 is not particularly important. ▮ Where an arrest is lawful, a search incident thereto is not unlawful merely because it precedes rather than follows the arrest (*People* v. *Ingle*, 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577]).

Defendant, however, argues that the recent opinion in *Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081] requires a different result in this case and also cites *Henry* v. *United States* (1959), 361 U.S. 98 [80 S.Ct. 168, 4 L.Ed.2d 134]. The court in the Mapp case, *supra*, at page 1088, specifically cited *People* v. *Cahan*, 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513]. The Henry case involved federal officers and no reasonable and probable cause was shown. We find nothing in *Mapp* v. *Ohio, supra*, to indicate that as a result of that decision the states are bound to follow the federal requirements of reasonable and probable cause instead of their own.

The second argument on appeal is that although the issue of the existence of probable cause is usually a question of law, in the instant case, because of the conflict in the evidence, it was a question of fact and should have been submitted to the jury under proper instructions. Although we have already concluded in the instant case that there was probable cause as a matter of law, we deem it our duty to briefly discuss this contention as the authorities are neither sufficiently clear nor properly precise.

Defendant relies on *People* v. *Paul*, 147 Cal.App.2d 609 [305 P.2d 996], where the court, although concluding that the rules were not applicable, said at page 619:

". . . '[I]t is correct to state that probable cause is a question of law to be decided by the trial court rather than the

jury,' . . . this rule is applicable only where there is no conflict to be decided by the court [citations]. . . . 'When the facts are controverted or the evidence conflicting, then the determination of their legal effect by the court is necessarily hypothetical, and the jury are to be told that if they find the facts in a designated way, then such facts do or do not amount to probable cause. (Citing cases.)' [Citation.]

"In determining whether the issue of probable cause is one for the court or for the jury care must be taken to consider what types of conflicting evidence regarding probable cause require submission to the jury for determination of the facts upon which probable cause for arrest is based. This, because it is well established in our law that in determining this question, the court looks only at the facts and circumstances *presented to the officer at the time he was required to act* (*People* v. *Kilvington, supra,* [104 Cal. 86] p. 92-94 [37 P. 799, 43 Am. St.Rep. 73]; *People* v. *Hupp,* 61 Cal.App.2d 447, 449 [143 P.2d 84]; *Van Fleet* v. *West American Ins. Co.,* 5 Cal.App.2d 125, 129 [42 P.2d 378, 43 P.2d 557]; *Murphy* v. *Murray, supra,* [74 Cal.App. 726] p. 730 [241 P. 938]). The conflict must concern the existence of the facts and circumstances upon which the officer based the arrest, and not such conflicts as are created by subsequent events. . . ."

█ However, the more recent view in this state appears to be that in a criminal case, the existence of probable cause is a question of law (*People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469]). █ Our Supreme Court in the Gorg case indicated that there was a very good reason for the rule, as follows, at page 781:

". . . The probative value of evidence obtained by a search or seizure, however, does not depend on whether the search or seizure was legal or illegal, and no purpose would be served by having the jury make a second determination of that issue.

█ Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt (*People* v. *Boyles, ante,* [45 Cal.2d] [p.] 652 [290 P.2d 535], and cases cited), evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search or seizure." (See also *People* v. *Silvestri,* 150 Cal.App.2d 114 [309 P.2d 871].)

No prejudicial error appearing, the judgment and order denying motion for new trial are affirmed.

Shoemaker, J., concurred.

Draper, J., concurred in the judgment.

Appellant's petition for a hearing by the Supreme Court was denied September 13, 1961.