[Crim. No. 9006. Second Dist., Div. One. Dec. 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. BOB MORAY, Defendant and Appellant.

Apple & Cohen and Irving D. Apple for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Charles A. Collins, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of possessing marijuana.

In an information filed in Los Angeles County on June 11, 1962, defendant was charged with possessing marijuana on May 21, 1962. A plea of not guilty was entered and a jury trial was waived and defendant found guilty as charged. Proceedings were suspended and probation was granted for three years, a part of the terms of probation being that defendant pay a fine of $500 plus a penalty assessment.

A résumé of some of the pertinent facts is as follows:

Officer Weisehart of the Los Angeles Police Department attached to traffic enforcement was on duty on March 21,

1962. On that date the officer saw the defendant driving an automobile westbound on Franklin Avenue in the curb lane approaching the intersection of La Brea Street. There is a posted boulevard stop at the mentioned intersection and defendant failed to stop for the sign and made a left turn around another left-turning vehicle. The defendant proceeded southbound on La Brea and made a right turn at the intersection of Franklin (there was an offset in Franklin Street at that time and place). As the defendant started to make his right turn the officer turned on the red light on his motorcycle, made a U-turn and drove his motorcycle slightly to the left and rear of the defendant's automobile and, while both vehicles were in motion, the officer asked the defendant to pull over to the curb. The defendant "drove toward the curb and parked at the first available parking space."

The officer testified: "As we approached the curb, I observed him to raise his right shoulder as if he were reaching in his pocket, and then lean towards the right hand seat. He appeared to make an effort to keep his head pointed straight ahead at this time." The officer estimated that the movement referred to was made when he was "approximately 15 to 20 feet behind his [defendant's] vehicle." The officer stated: "I couldn't see his [defendant's] hand, no, sir, I just saw the general motion." He didn't know whether the defendant's hand went under the seat or not. The officer parked his motorcycle to the rear of defendant's car, approached the driver's window and asked defendant for his operator's license. The officer testified, "I believe he got an operator's license out of the glove compartment or some receptacle in the vehicle and handed it to me." Thereupon the officer asked the defendant "what he had hidden underneath the seat" and the defendant answered "nothing." The defendant was directed to get out of his car and stand to the rear of the vehicle. The officer commenced a search of the automobile and testified that he found a small package under the front seat. The package contained marijuana. At the time and later the defendant denied any knowledge of what the package contained or how it got there.

The officer further stated that the traffic violation of the defendant consisted of failing to stop at a posted boulevard stop sign and making a left turn from the wrong lane. Other than the vehicular violations mentioned the defendant was not driving erratically, he was not speeding, he had no difficulty in applying his brakes when the officer directed him to

pull into the curb and park. The officer did not examine the defendant's eyes and apparently did not smell any liquor upon the breath of defendant for the officer stated he did not recall smelling the defendant's breath. The officer further stated that to his knowledge he had never seen the defendant before nor to his knowledge had he ever seen the defendant's automobile before. The officer had no warrant of arrest nor did he have a warrant to search the defendant's car. The officer also testified that throughout the years of his service he had issued many citations and that he had seen motorists make an arm movement after he had signalled them to pull over to the curb. It was stipulated that there was marijuana in the container which the officer found as a result of the search. A proper motion to exclude the evidence was timely made.

Appellant now asserts that the search and seizure was unreasonable under the law and that the contraband should not have been admitted into evidence.

There is no testimony as to what occurred prior to the search (or when it was), which made the officer believe that the defendant was committing a felony in the presence of the officer. There is no testimony that any of the movements which the defendant made were furtive or unusual in character, there is no testimony of any haste upon the part of the defendant, his head and the upper part of his body were apparently in full view of the officer at all times, and so far as any testimony goes, the defendant did nothing which appeared to the officer to be sneaky or shifty. The Attorney General seems to argue that because the defendant "appeared to make an effort to keep his head pointed straight ahead" while he was guiding his automobile into a parking place there is some cause to believe that the defendant was guilty of committing a felony. We see nothing wrong with a motorist's watching and looking in the direction in which he is driving his vehicle. To do otherwise might well (and frequently does) cause an accident.

In this case there is no testimony with reference to any suspicious conduct of the defendant—he immediately, promptly and properly complied with the officer's request to pull his vehicle over to the curb and park his car. There is no contention that the defendant was in the slightest fashion attempting to evade the officer. Unlike the situation in *People* v. *Shapiro*, 213 Cal.App.2d 618 [28 Cal.Rptr. 907], the defendant here was in view of the officer at all times, the car

did not hit and bounce off of the curb, the defendant here stopped at once without the necessity of the police following him for several blocks with red lights flashing and a police horn blowing.

■    The illegal left turn and the failure to stop at a posted stop sign under the circumstances would not have justified a search of the car for such search could have had no relation to the traffic violation. (See *People* v. *Blodgett*, 46 Cal.2d 114, 116-117 [293 P.2d 57].)

There is nothing in the record here to indicate that defendant was attempting to hide anything—he was not a narcotics addict, nor was he suspected of being such—the officer had never seen the defendant, nor his car, before. The defendant's automobile was not listed on any "hot sheet." The officer did not see the defendant's hands. In effect all that the officer saw was an arm motion. The defendant might have been scratching himself, he might have been reaching for his wallet with his identification and documents therein or he might have been simply changing his physical position, none of which activities would seem to be a reasonable cause to suspect him of committing a felony.

The officer did not testify that it was the manner in which defendant made his movements which aroused his suspicions nor did he give any testimony or other reason for conducting the search. There is nothing in the evidence by which we or anyone else can tell the extent of the motion, that is whether it was slight or otherwise, nor is there anything in the evidence to indicate which pocket of defendant's wearing apparel it was that he was reaching to or for, that is whether it was a shirt pocket, a coat or pants pocket, nor is there any reference as to whether it was a right-hand or left-hand pocket.

There could have been no thought by the officer that the defendant was using or was about to use a gun against the officer and that the search was for that purpose, for the defendant was out of the automobile and posted or positioned by the officer when the search commenced.

There is nothing in the record as to the extent of the defendant's leaning toward the right seat other than that he "just saw the general motion." He could not testify as to where the defendant's hands were.

The officer in this case never did testify as to what it was that he was looking for when he started to search the vehicle and presumably it was just a general search to see what he could find and turn up.

No robbery or other crime had been committed in the area with the police on the alert in the district for a suspect with reference to such other crime. Presumably the hour was not late at night for there is no testimony in the record as to the time of day or night when the search and seizure took place.

At the time of the approach of the officer and after the vehicles were parked, the defendant made no effort to leave his car and to decoy the officer away from it such as was done in *People* v. *Williams*, 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].

If the conduct set forth in the record in this case were to constitute probable cause for a traffic officer to believe that a felony has been committed and that a search of the motorist's vehicle is authorized, then practically every motorist in California who receives or is about to receive a traffic citation will be subject to having his person and his automobile searched by the traffic officer—such is fortunately not the law.

It may well be that there were other factors about which there is no testimony or evidence in the record which might have lead the officer to make the search—it is however not for this court to speculate upon what might have been the testimony had the officer testified more fully and completely—we can only pass upon the record which is before this court.

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.