[Crim. No. 12404.   Second Dist., Div. Three.   July 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOE RAMOS CRUZ, Defendant and Appellant.

Edward I. Gritz for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*—

### Statement of the Case

Defendant was charged by information with violation of section 11911 of the Health and Safety Code in that he unlawfully possessed for sale a restricted dangerous drug, to wit, amphetamine sulphate, commonly known as benzedrine. Two prior felony convictions of violation of section 11500 of the Health and Safety Code were also charged. Defendant's motion to set aside the information pursuant to the provisions of section 995 of the Penal Code was denied. A plea of not guilty was entered and the defendant denied the allegations of prior convictions. The right to trial by jury was waived and the cause was submitted on the transcript of the testimony received at the preliminary examination, together with testimony introduced by both sides at the trial. The defendant was found guilty as charged, and the allegations of prior convictions were found to be not true. The motion for a new trial was denied, probation was denied, and sentence to state prison followed. The appeal is from the judgment.

### The Facts

On October 26, 1965, at about 11:15 a.m., Gary Lee, a police officer for the City of Los Angeles, while on patrol duty,

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

observed the defendant driving a 1957 Cadillac south on Gaffey Avenue. The frame of the vehicle was below the lowest portion of the wheel rim as proscribed by section 24008 of the Vehicle Code. Officer Lee stopped defendant's vehicle, using the red lights on his police vehicle, and parked the latter approximately 15 feet to the rear of the Cadillac. Before alighting from the police vehicle, Officer Lee observed the defendant's "right shoulder lower suddenly." The defendant "looked to the left," and "appeared to be reaching for something in the vicinity of the floorboards and the front seat of the vehicle." Officer Lee asked the defendant for his driver's license and received it. He then asked the defendant what he had placed under the front seat of his vehicle. The defendant made no statement and shrugged his shoulders. He looked straight ahead. By a "shrug" Officer Lee meant that the defendant lifted both shoulders in an up-and-down motion and remained silent. Officer Lee then asked the defendant if he "would mind" if he (Lee) looked under the front seat. He received the "same reaction" from the defendant, a mere shrug of the shoulders while the defendant looked straight ahead with a "blank" expression. Officer Lee then asked the defendant to step from his vehicle and directed him to the sidewalk. The defendant complied. Officer Lee then looked under the left front seat of the Cadillac where he observed three packages. He removed one of them, showed it to the defendant, and asked what was in it. The defendant made no reply, not even a gesture. Officer Lee then opened the package and saw that it contained numerous white, double-scored tablets, which, in his opinion, looked very much like benzedrine. The defendant was then placed under arrest and was advised "of his constitutional rights."

Officer Lee then made a further search of the vehicle. In the glove compartment he found a large paper sack containing five other packages similar to those he had found under the front seat. He also found two opened bags or packages which contained what appeared to be benzedrine pills. Altogether 10 packages were found. It was stipulated that the tablets had been examined by a chemist and found to be "Amphetamine." Officer Lee had no warrant for the arrest of the defendant, nor did he have a warrant to search the defendant's vehicle.

Heber C. King, a police officer for the City of Los Angeles, assigned to the narcotics division, testified that he had been assigned to narcotics since 1957, and had engaged in the

investigation of narcotics offenders constantly during that period of time; on approximately 100 occasions he had come in contact with cases involving violation of the law relating to the drug amphetamine sulphate, or benzedrine; he examined the packages taken from the defendant's vehicle and estimated that they contained from 6,500 to 10,000 tablets; in his opinion the tablets were possessed for sale; he based his opinion on the fact that the tablets were put up in 10 separate packages with approximately 500 to 1,000 tablets in each package, that "these packages are the way that benzedrine tablets are packaged to sale [*sic* ] to smaller peddlers, who, in turn, roll them in packages from five to ten to a roll and sell them on the street." He based his opinion on the large amount of pills and the even division of them into 10 packages.

Upon the trial, Officer King testified that he talked to the defendant on October 27, 1965, after he advised the defendant "that he had a right to an attorney, a right to remain silent, that anything that he said could be used against him in further proceedings." At this time Officer King asked the defendant "if they were all 'bennies' that he had, if he had any 'reds,' " and the defendant replied, "No, they were all 'bennies.' "

The defendant testified in substance, on the question of the right of Officer Lee to conduct a search of his vehicle as follows: After he noticed the red light on the police vehicle approaching, he reached over and turned off his radio, pulled over to the right and stopped; Officer Lee approached and asked for his driver's license which was produced; Officer Lee then asked him to step out of the car and asked him what he had hidden; the defendant replied, "nothing"; Officer Lee then said, " 'Can I search the automobile?' ", and before he could reply, "he told me to go back and stand by his automobile"; he did not recall shrugging his shoulders; Officer Lee then began searching the vehicle.

### The Contentions and the Law

The defendant urges two grounds upon which he seeks reversal of the judgment. They are (1) the contraband was obtained through an illegal search of defendant's vehicle and for this reason the evidence relating to it should have been suppressed, and (2) the evidence, if admissible, was insufficient to sustain the judgment of conviction of possession for sale.

After both sides had rested and at the conclusion of the arguments, the trial judge, before pronouncing the defendant guilty, made the following comments:

"THE COURT: I am inclined to follow the Moray [*People* v. *Moray*, 222 Cal.App.2d 743 [35 Cal.Rptr. 432]] insofar as the so-called absence of furtivity is concerned in this record and specifically so find so that we do have a clear record here. That the record I have here is barren of sufficient testimony to establish a reasonable or probable cause to search per se.

"But the record does show, to my mind, a consent upon request on the part of the officer to search, which revealed the contraband.

"The objection to the introduction of the evidence, then, will be overruled. The evidence will be received."

▮ The finding of the trial court that there was insufficient evidence to support probable cause to search the defendant's vehicle for contraband narcotics finds ample support in the record. The evidence discloses that Officer Lee stopped the defendant for the purpose of citing him for a minor violation of the Vehicle Code. He observed the defendant make a motion which the officer construed as reaching for something in the vicinity of the floorboard of the vehicle. Nothing of a suspicious character was visible to the officer when he stood beside the defendant's vehicle. The record does not disclose that Officer Lee had any background of experience in narcotics violations except some instruction training at the police academy. The defendant was not known to Officer Lee at the time he stopped him as having any connection with the illicit traffic in narcotics. There was no evidence to indicate that Officer Lee suspected that the motion he observed was connected with the disposition of contraband narcotics. For all the record discloses, the officer's inquiry as to what had been hidden did not direct itself specifically to narcotics but was prompted by a general curiosity to ascertain what, if anything, was within the defendant's vehicle. We are of the opinion that there was insufficient evidence to support probable cause to search the vehicle for contraband narcotics. (See *People* v. *Moray*, 222 Cal.App.2d 743, 744, et seq. [35 Cal.Rptr. 432].)

On the question of consent to search it is held that to protect his right to object to an unreasonable search or seizure a defendant need not forcibly resist an officer's assertion of authority to enter his home, or search it or his person, but if he freely consents to an entry or search, or voluntarily pro-

duces evidence against himself, his constitutional rights are not violated and any search or taking of evidence pursuant ' such consent is not unreasonable. (*People* v. *Shelton,* 60 Cal. 2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665].) ■ Where the People seek to justify a search on the ground that consent thereto was given, they have the burden of proving consent. (*People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469].) Although not conclusive, a circumstance of particular significance is a defendant's custody at the time of the request for his permission to search, for where he has submitted to arrest, or is in jail, he knows that he is virtually powerless to prevent the search. (*Castaneda* v. *Superior Court,* 59 Cal.2d 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641].) Whether in a particular case an apparent consent was, in fact, voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances. (*People* v. *Shelton, supra,* at p. 746.) "A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied. The Government has the burden of proving by clear and positive evidence that such consent was given." (*Channel* v. *United States* (9th Cir. 1960) 285 F.2d 217, 219-220; *Judd* v. *United States* (1951) 190 F.2d 649, 651 [89 App. D.C. 64].) It has been held that consent to search was shown where the defendant, while under arrest, when asked by the police whether he had any objection to them going and looking in his car, shrugged his shoulders and replied, "do what you want." (*People* v. *Dahlke,* 257 Cal.App.2d 82, 85 [64 Cal.Rptr. 599].)

■ In the case at bench when Officer Lee asked the defendant "if he would mind if I looked under the front seat of his vehicle," the defendant shrugged his shoulders but made no verbal response to the request. He remained seated in the vehicle, thus blocking the officer's access to the area indicated to be searched, until he was ordered out of the vehicle and directed to stand nearby on the sidewalk. We are of the opinion, in the light of all the circumstances, that the conduct of the defendant, as it bore upon consent to search his vehicle was equivocal, was not specific, and that the finding of the trial court that the defendant consented to the search is not supported by substantial evidence. (See *People* v. *McKinney,* 219 Cal.App.2d 120, 123 [32 Cal.Rptr. 562].) In this state of the record the defendant's motion to suppress the evidence of

the drugs wrongfully seized should have been granted. Without such drugs, the evidence is insufficient to sustain the judgment.

In view of this holding we deem it unnecessary to resolve the other question raised in the defendant's brief.

The judgment is reversed.

Ford, P. J., and Moss, J., concurred.