[Crim. No. 8234. First Dist., Div. Two. May 18, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH PAUL HANA III, Defendant and Appellant.

**COUNSEL**

John D. Nunes, Public Defender, and James A. Kealey, Assistant Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and John F. Henning, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TAYLOR, J.**—Defendant appeals from a judgment of conviction entered after a court trial finding him guilty of the possession of marijuana, in violation of Health and Safety Code section 11530. He contends that the contraband introduced into evidence against him was obtained as the result of an unlawful search and seizure as: 1) the arresting officer did not have reasonable grounds to believe that he and his companions were armed so as to justify a "frisk" search; 2) and even if proper, the "frisk" exceeded the proper bounds permitted by *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 890, 88 S.Ct. 1868]; and 3) there was insufficient probable cause to arrest him for the possession of marijuana.

The matter was submitted on the transcript of the combined preliminary hearing and proceedings under defendant's motion to suppress certain evidence (Pen. Code, § 1538.5). The following pertinent facts appear: On November 29, 1968, at approximately 10:45 in the morning, Officer Cox of the Fremont Police Department was in the vicinity of Olive Avenue and Chadbourne. Cox observed a red Ford panel truck with a defective left rear brake light and stopped the vehicle pursuant to Vehicle Code section 24603, subdivision (e).[1] Defendant, who was driving the truck, was accompanied by his brother and another boy named Cooper. After Cox obtained identification from defendant and checked the registration of the vehicle, he advised defendant that he was being stopped for the defective tail light.

To check the light, Cox stepped on the brake pedal from the driver's side. About this time, Officer Tanner, the cover officer, arrived. As the brake light flashed dimly, no traffic citation was issued. However, as Cox stepped on the brake pedal, he saw in the open glove compartment a Shell Oil Company paper matchbook with the top half of its cover missing and a closed penny Diamond matchbox. Cox also noticed a second Diamond

---

[1]The statute requires a functional brake light for all vehicles.

penny matchbox and a white topless matchbook in the bed of the truck but did not pick up either item at the time.

Cox had several years of training and experience in narcotics arrests and knew that the covers of matchbooks were used as holders or "crutches" for the ends of marijuana cigarettes, and that penny matchboxes were frequently used as containers for a quantity of marijuana usually sold for about $5. Accordingly, he was of the opinion that the presence of the matchbox and topless matchbook in the glove compartment, and the matchbox and topless matchbook in the bed of the truck, indicated a "good possibility that illegal contraband was also in the vehicle itself."

Cox advised defendant of his rights and requested permission to search the truck. Defendant consented and Cox then proceeded with the search of the vehicle. While Cox searched the driver's side of the truck, defendant and his two companions remained standing at the rear of the vehicle. When Cox moved to the passenger side, defendant and the other two boys came up behind the officer. Cox then decided it would be better to find out whether any of them had any weapons, and withdrew from the truck.

Cox first asked defendant to turn around and remove his hands from his pockets. Cox then conducted a pat search. Defendant complied and stood with his hands in the air and his back to the officer. As Cox touched him on the right side, defendant grabbed for his jacket pockets and quickly turned around so that he was facing Cox. Cox then asked defendant to turn around again, put his hands on the truck, and assume the search position. Defendant did so, and Cox then felt a hard object, like a pocket knife, in defendant's right jacket pocket. Cox reached in and removed a harmonica.

Cox continued the pat search of defendant and in the left front jacket pocket felt some soft bulky material in a bag or piece of paper that made a noise and rattled as if it might be plastic. Cox removed a plastic bag containing green vegetable matter that was subsequently determined to be 26.3 grams of marijuana. Cox then found a package of zig-zag cigarette papers in defendant's left front pocket.

After arresting defendant for possession of marijuana, the officers picked up the box of matches and white matchbook that had been previously observed in the rear of the truck. This matchbox was empty, while the one observed earlier in the glove compartment contained six matches. Another topless matchbook was found in the rear of the truck, an additional one in the glove compartment and a third one in the passenger side of the vehicle. No contraband was found in the vehicle or on the other two passengers. The trial court denied defendant's motions to suppress the

evidence (Pen. Code, § 1538.5) and to dismiss (Pen. Code, § 995) on the theory that the officer had reasonable probable cause to believe that defendant was in possession of marijuana.

Defendant concedes that the original stopping of the truck for the violation of the Vehicle Code was proper. However, relying on *Terry* v. *Ohio, supra,* and its companion case, *Sibron* v. *New York,* 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889], he first argues that the "frisk" was improper as Cox had no reasonable grounds for believing that he and his companions were armed or dangerous.

In *Terry,* the United States Supreme Court set forth the guidelines for determining the validity of a frisk and pat search, as distinct from a search incident to a lawful arrest. At page 20 [20 L.Ed.2d at p. 905], the United States Supreme Court stated that the test is "a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."

The first half of the test, "whether the officer's action was justified at its inception," was given the following explication: "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, *not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in the light of his experience.*" (P. 27 [20 L.Ed.2d at p. 909]; (italics added.)

█ The first question is whether, when measured by the standard of the "reasonably prudent man" Cox's decision to interrupt his search of the interior of the truck and "frisk" defendant and his companions after they had moved from their previous position at the rear of the truck to one directly behind him, was justified.

Defendant relies on *Sibron* v. *New York, supra,* a companion case to *Terry* v. *Ohio, supra.* In *Sibron,* an officer saw the defendant talking to a number of known narcotic addicts inside a restaurant on several occasions. However, no conversations were overheard and nothing was seen to pass

between Sibron and the addicts. The addicts left and Sibron was eating when the officer approached him and asked him to step outside. Once outside, the officer said to Sibron: "You know what I am after." Sibron mumbled something and reached into his pocket. Simultaneously, the officer thrust his hand into the same pocket and found several envelopes containing heroin. The officer then sought to justify this search as being one for his own protection as he feared that Sibron was reaching for a weapon. The United States Supreme Court pointed to the fact that outside of Sibron's talking with a number of known addicts over an eight-hour period, there were no facts reasonably giving rise to fear of life or limb or the commission of an offense. In holding that the search violated the Fourth Amendment, the United States Supreme Court said at page 65 [20 L.Ed.2d at p. 936]: "The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man."

We think the "frisk" in the instant case must fall for the same reason. Although defendant had been initially properly stopped for a valid reason, the examination of the faulty brake light, there was no reason for Cox to believe that defendant and his companions were armed or dangerous. It was broad daylight and Officer Tanner was also on the scene. Defendant and his companions were calm and cooperative and consented to the search of the vehicle. There was no unusual conduct on their part, except coming in behind Officer Cox.

Unlike the situations in some of the authorities cited by the People,[2] Cox was apprised of no circumstances from which it could be reasonably inferred that defendant and his companions were armed or dangerous. Defendant was not charged with a violent crime. The officers had decided not to make an arrest for the traffic citation. At best, Cox had only a subjective hunch about the presence of marijuana in the vehicle. As we indicated in the portion of the *Terry* opinion, quoted above at page 668, the prudent man test requires that due weight be given to the facts and not the subjective hunches of the officer. We conclude, therefore, that Officer Cox's action was not justified at the inception and all of the evidence obtained in the improper "frisk" of defendant must be excluded.

---

[2]For example, in *People* v. *Britton*, 264 Cal.App.2d 711 [70 Cal.Rptr. 586], the officers at 2 a.m. observed the defendant leave and return to the parking lot of a market whose burglar alarm was not working properly. When the officers stopped the defendant to question him, they observed the barrel of a .22 rifle protruding from under the front seat, and the appellate court held that under those circumstances, the officers were justified in conducting a "frisk" search. In *People* v. *Weitzer*, 269 Cal.App.2d 274 [75 Cal.Rptr. 318], the defendant was arrested on a valid traffic warrant and then searched.

Although the case can be disposed of on this ground alone, we deem it necessary to briefly comment on the other contentions raised.

■ Even if we had concluded that the "frisk" was justified, the second part of the bifurcated *Terry* test comes into play, "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." This language was given articulation in *Terry, supra,* at pages 25 and 26 [20 L.Ed.2d at p. 908], as follows: "A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. [Citation.] Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion."

We note, parenthetically, that the fact that marijuana was found and defendant's arrest followed does not justify the search; it has been held repeatedly that a search cannot be justified by what it turns up (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528]).

Here, the harmonica, which from the outside reasonably felt like a pocket knife, was properly removed from defendant's pocket. However, as in *People* v. *Britton, supra,* the soft package containing the marijuana discovered in defendant's pocket during the frisk bore no resemblance to a weapon and had no possible use as such. Accordingly, even assuming that the frisk was proper, the scope of the frisk for weapons exceeded the bounds set forth in *Terry* (*People* v. *Britton, supra; Byrd*[3] v. *Superior Court,* 268 Cal.App.2d 495 [73 Cal.Rptr. 880]). Thus, the marijuana could also be excluded on that ground.

Nor can we agree here that defendant's gesture in turning around during the search was sufficiently furtive as to expand the scope of the search. Although the turn-around was clearly not a friendly gesture, defendant, when asked to comply, obeyed and did not attempt to escape, etc. Furthermore, the gesture was related to his right side where the harmonica was subsequently found.

■ Finally, we turn to the People's contention that the marijuana was properly admitted as the search of defendant was a reasonable search incident to his arrest for the possession of marijuana. The People, like the court below, rely on *People* v. *Graves,* 263 Cal.App.2d 719 [70 Cal.Rptr.

[3] In *Byrd,* the defendant was stopped for a traffic violation and pat searched for weapons. Then, while he was standing next to the officers, the officers noticed a large bulge in the waistband under his sweater. The officers pulled up the sweater and found four packages of marijuana. The court likewise held that the search also exceeded the proper bounds proscribed by *Terry.*

509], wherein this court (Div. One) held that if probable cause exists for the arrest for an offense other than the traffic offense for which defendant was originally stopped, the arresting officer is entitled to conduct a contemporaneous search of the offender's person, not only for weapons, but also for the fruit of or the implements used to commit crime.

We cannot agree that the presence of two matchboxes and two topless matchbooks in the truck constituted reasonable probable cause to arrest defendant for the possession of marijuana. The mere presence of these innocent objects, even when coupled with the officer's knowledge that they could be used to make roaches or store marijuana, was not sufficient. All of the cases cited by the People are distinguishable as in each, the arresting officer had sufficient probable cause for believing the defendant had committed an offense in addition to the one for which he was initially stopped or apprehended.

For example, in *People* v. *Toulson,* 272 Cal.App.2d 181, 186 [77 Cal. Rptr. 271], the furtive gesture related to the wax paper bag of marijuana that the defendant attempted to conceal; in *People* v. *Ouellette,* 271 Cal.App.2d 33 [76 Cal.Rptr. 346], the suspect opened his locker to get his identification papers. As he did so, the officer noticed a plastic bag containing green vegetable matter and a corn cob pipe. In *People* v. *Weitzer, supra,* the defendant lied about the object in his pocket and the lie was immediately apparent to the officer conducting a pat search.

Since the search of defendant was not made incident to an arrest, it was not a proper "frisk" and in any event, exceeded the permissible bounds of a "frisk" under the principles formulated by the United States Supreme Court in *Terry,* and articulated in *Sibron,* it must follow that the fruits of such search are inadmissible under the exclusionary rule adhered to by the United States Supreme Court and the California Supreme Court.

The judgment is reversed.

Shoemaker, P. J., and Agee, J., concurred.