[Crim. No. 14342. Second Dist., Div. Five. Jan. 9, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD B. FIGUEROA, Defendant and Appellant.

Daniel L. Dintzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—After a preliminary hearing, an information charging defendant with a violation of section 11530 of the Health and Safety Code (possession of marijuana) was filed in case number 327731, in the Superior Court of Los Angeles County. After a court trial defendant was found guilty. After his motion for a new trial was denied, criminal proceedings were adjourned and he was committed under the provisions of section 3051 of the Welfare and Institutions Code. The appeal is therefore from the order denying the motion for a new trial. (Pen. Code, § 1237, subd. 2, as in effect when the appeal was taken.)

## FACTS

On August 8, 1966, in the afternoon, Officer Batson, who was alone in a police vehicle, saw defendant driving a car. There were two passengers in the car, one of whom sat in the right front seat. The car had no 1966 registration tag on the rear plate. The officer caused defendant to stop his car. He too stopped. Defendant then left his vehicle "quite suddenly" and walked toward the police car. Batson, in turn, stepped out of his car and explained to defendant why he had been stopped. He asked to see the registration of defendant's car. One Pryor, the passenger in the right front seat, took some papers out of the glove compartment and handed them to defendant. The papers were a pink slip, showing title in someone other than defendant; however—as Batson testified there were "other papers from D.M.V. which showed that he was in the process of getting [the registration] changed to his name but had not completed it."

Since the officer, being alone, felt it a disadvantage to have two persons in the car and one outside, he asked Pryor and the other passenger to step out of the car. As Pryor complied, the officer noticed a cellophane wrapper sticking out of a rip in the front seat. It contained what looked like a green plant substance, which he believed to be marijuana.[1] He placed all three persons under arrest.

At the scene of the arrest defendant was properly advised of his constitutional rights and said that he understood them. On the way to the station defendant denied any knowledge of the presence of marijuana in the car. At the station defendant was caught in the act of reaching for the evidence and attempting to flee with it. After being subdued, defendant said that the marijuana was not his and he was not going "to get hung for it."

---

[1] It was stipulated that the officer was later proved to be correct.

On August 9, Officer Knowles again properly advised defendant of his constitutional rights. Asked whether he understood his rights defendant either answered in the affirmative or nodded. Defendant then made an oral confession to the effect that the marijuana was his and said that the two passengers did not know anything about it. He also signed a written confession. Before defendant signed the written confession which had been written out by the officer, he asked "if that would cut loose" the passengers. The officer said he did not know, that it was up to the district attorney.

In the superior court defendant made a motion, pursuant to section 995 of the Penal Code, to have the information set aside. The only matter argued was the legality of the seizure. The court first granted the motion, holding that the officer had no right to order Pryor out of the car. It was then brought to the attention of the court that sometime before the incident in question defendant had accepted probation in another case. One of the conditions was that he submit himself to otherwise unreasonable searches by peace officers.[2] The court then vacated its ruling and denied the motion.

The matter went to trial before the same judge. Jury trial was waived and the case was submitted on the transcript of the preliminary hearing. The stipulation with respect to the submission is set forth in the footnote.[3] It will be noted that there is no stipulation that objections to evidence made before the magistrate need not be renewed in the superior court.

Before the trial defense counsel had done additional research since the time of the 995 motion and he directed the court's attention to *People* v. *Gallegos,* 62 Cal.2d 176 [41

[2]The precise wording of the condition of probation is as follows: "Defendant consents to seach [*sic*] of person and property by any law enforcement officer." A similar condition was held to be valid in *People* v. *Kern,* 264 Cal.App.2d 962, 965 [71 Cal.Rptr. 105].

[3]"MR. JACOBSON: . . . We offer to stipulate that the Court may read and consider the transcript of the testimony taken at the preliminary examination in this case, which resulted in the filing of Information No. 327731, with the same force and effect as if the witnesses therein named were personally present in this court, sworn and testified under oath accordingly. Any stipulations entered into at that time are re-entered into for the purpose of this trial. The People's exhibits 1 and 2 which were introduced into evidence at that time be deemed introduced into evidence at this trial, subject to any legal objection as to their admissibility. The defendant waives his Constitutional right to be confronted by the witnesses against him and both sides reserve the right to put on additional evidence. MR. LIGHTNER: So stipulated. MR. JACOBSON: Is this procedure personally agreeable with you, Mr. Figueroa? THE DEFENDANT: Yes, sir. THE COURT: The Court will approve the jury waiver as well as the stipulation. . . ."

Cal.Rptr. 590, 397 P.2d 174], which holds that an illegal search and seizure could not be saved by the fact that the person searched was on parole, where the record did not disclose that he was detained as a possible parole violator. The trial court, however, ruled that "what is in the mind of one peace officer is in the mind of all peace officers" and again found that the condition of probation validated the seizure. The marijuana was admitted. No objection to the admission of any other evidence received by the magistrate was made. Defendant was convicted.

On appeal defendant contends that the marijuana was illegally seized and that his confession should not have been admitted. We disagree on both points. Ironically, on the first point, we reach the same result as the trial court because we disagree with its two key rulings.

### The Legality of the Seizure

Although the applicability of *People* v. *Gallegos, supra*,[4] seems compelling, the entire issue of the effect of the condition of probation is a red herring. If the request to leave the car was an instance of overbearing police conduct, the victim was Pryor, not Figueroa. If Figueroa has no standing to complain of the violation of Pryor's rights, that is the end of the matter. If he does have standing—as we think he does (*People* v. *Martin*, 45 Cal.2d 755, 759-761 [290 P.2d 855])—to say that the consent to be searched includes a waiver of objections to the violation of civil rights of others, stretches its effect far beyond its obvious intent.

In any event, what defendant consented to was to be searched. Here, there was no search. Once Pryor got out of the car, the marijuana was in plain sight.

This brings us to the real issue: was the officer legally justified in requesting Pryor to get out of the car?

We accept the trial court's interpretation of the record to the effect that after Batson was shown the Department of Motor Vehicle documents which showed that Figueroa was in the process of having the car registered to his name, he no longer had any cause to suspect that the car was stolen.[5]

---

[4] We do not consider the fact that Gallegos was on parole, while defendant in the case at bar was a probationer, a sufficient distinction. See also *People* v. *Henze*, 253 Cal.App.2d 986, 991 [61 Cal.Rptr. 545].

[5] At the section 995 hearing, at which the court first granted, but then denied, the motion to have the information set aside, the court made no express finding on that point, but it is quite clear from the record and the context in which the motion was first granted, that in the court's view the question of the automobile having been stolen had been laid to rest by the production of the documents.

726

Nevertheless, as far as he was concerned, the confrontation with the occupants was not at an end. The car was being operated in violation of sections 5202 and 5204 of the Vehicle Code, a misdemeanor. (Veh. Code, § 40000.) His duty required that he remain in the presence of defendant and his companions. He was alone, there were three of them.

Although when persons are stopped for simple traffic violations, a police officer's authority to encroach upon the right of such persons "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" (U.S. Const., Fourth Amendment) is very limited indeed (*People* v. *Blodgett*, 46 Cal.2d 114, 116-117 [293 P.2d 57]; *People* v. *Cruz*, 264 Cal.App.2d 437, 441 [70 Cal.Rptr. 249]; *People* v. *Moray*, 222 Cal.App.2d 743, 746-747 [35 Cal. Rptr. 432]), a certain antagonism in the confrontation is inevitable. Although there is no question that the officer's actions have to be measured by the imperatives of the Fourth Amendment (*Terry* v. *Ohio*, 392 U.S. 1, 16-20 [20 L.Ed.2d 889, 903-905, 88 S.Ct. 1868]), *Terry* establishes a principle of flexible, graduated responses by the police in view of the "rapidly unfolding and often dangerous situations on city streets. . . ." (*Ibid.*, p. 10 [20 L.Ed.2d at p. 899].)

In *Terry* the Supreme Court decided under what circumstances a police officer is entitled to effect a temporary detention of a person and to conduct a superficial frisk for weapons. In the case at bar it cannot be—and is not—contended that the situation was such that a reasonable officer could have drawn specific inferences from the situation which would have entitled him to frisk any of the occupants of the car.

Of course nothing of the kind took place. All that Batson did was to ask the passenger to join the driver. He had, what the United States Supreme Court calls, an "inchoate and unparticularized suspicion" (*Terry* v. *Ohio, supra*, p. 27 [20 L.Ed.2d at p. 909]) that it would be better for his personal safety if defendant and his passengers were closely grouped. To be sure he could have achieved the same objective had he asked defendant to get back behind the wheel. Alternatively he could have retreated to a safe distance and covered all three occupants with his weapon until a back up unit arrived, thereby making a rather silly spectacle of a routine traffic violation encounter. Instead he chose to request Pryor and the other passenger to step out of the car. This involved nothing like the indignity of the "frisk." (*Terry* v. *Ohio*,

*supra,* pp. 16-17, 24-25 [20 L.Ed.2d at pp. 903, 907-908].) Nothing suggests that Pryor's freedom was otherwise curtailed. Had he, before the discovery of the marijuana, decided to continue his journey on foot, he apparently would have been free to do so. Moreover, there is nothing whatever in the record to indicate that the request to Pryor was a subterfuge for a desire to obtain a more unobstructed view of the interior of the car.

Having in mind that the situation called for a continued confrontation between Figueroa and the officer until the business concerning the tab was taken care of, we believe that his request to Pryor was the kind of flexible, graduated response which *Terry* permits.

The seizure of the marijuana was legal.

### THE CONFESSION

Defendant submits that the confession should not have been received. He gives us three reasons.

Citing *Wong Sun* v. *United States,* 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407], he claims that the confession was "fruit of the poisonous tree," that is to say, of the discovery of the marijuana. For the reasons stated that point has no merit.

██ He also claims that he was induced to confess because he was led to believe that if he did so his two companions would be set free. The recital of facts demonstrates that the point has no merit.[6]

██ Finally it is claimed that there was a violation of the rule stated in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Without setting forth the testimony at length, we think that the record shows that the *Miranda* warnings were adequately given. We agree with counsel appointed in this court, that the evidence of an express waiver of his rights by defendant, is, at best, slight. However, as we have pointed out, there was no objection at any point in the superior court. (*People* v. *Castro,* 257 Cal. App.2d 643, 645-646 [65 Cal.Rptr. 62].)

The order denying a new trial is affirmed.

Stephens, J., and Aiso, J., concurred.

---

[6] If, indeed, the confession was coerced, the failure to object is immaterial. (*People* v. *Matteson,* 61 Cal.2d 466, 469 [39 Cal.Rptr. 1, 393 P.2d 161].)