[Crim. No. 18557. Second Dist., Div. One. Sept. 17, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS JOE KNIGHT, Defendant and Appellant.

## Counsel

Samuel P. Delug, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Sanford H. Feldman, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**LILLIE, J.** — Defendant was charged with possession of marijuana (§ 11530, Health & Saf. Code); his motion to suppress the evidence under section 1538.5, Penal Code, was denied. A jury found defendant guilty as charged; he appeals from the judgment.

The evidence on the 1538.5 motion establishes the following. Around 9:10 p.m. on April 23, 1969, Deputies Kusch and Wilber, riding in a marked sheriff's vehicle on Foster Bridge, observed a 1957 Pontiac being driven by defendant in which one Dunlap was a passenger, approaching; as the Pontiac passed the sheriff's vehicle it turned onto Priam Drive and accelerated rapidly to 40 miles per hour in a 25-mile per hour residential zone; they stopped the Pontiac for a speeding violation. Deputy Kusch approached the passenger side and Deputy Wilber the driver's side; the occupants appeared to be 18 or 20 years of age. The stop of defendant's car was different from the normal stop of a vehicle for a traffic violation because of its rapid acceleration and excessive speed on Priam—it was not a typical slow acceleration to 40 miles per hour—there had been numerous gang activities in the area and the vehicle had come from the area where

gang activity had taken place and where offensive weapons recently had been used to a great extent; "All of these things brought about the fact that I was going to protect myself and my partner to the best of my ability"; thus the deputies requested the occupants to step out of the vehicle for their [officers'] safety. The window of the passenger side was rolled up; Deputy Kusch opened the passenger door next to Dunlap, and as it opened he smelled a very strong odor of marijuana emanating from the vehicle and saw smoke rolling from it. Dunlap emerged in a bent over position, and as he did so Deputy Kusch who was standing between the door and the front fender observed a hand-rolled cigarette in his shirt pocket; he took the cigarette and placed Dunlap under arrest. Thereafter Officer Wilber searched the vehicle and found a plastic package containing marijuana and another hand-rolled cigarette under the driver's seat, and a burnt "roach" in the pocket of a jacket lying on the front seat. Defendant was then also arrested and during booking Zigzag papers were found in his pockets.

Defendant testified that he was driving 35 miles per hour when stopped; when the deputies approached they asked him and Dunlap to step out where they were each patted down and placed under arrest; the jacket found in the vehicle belonged to Dunlap; there was no marijuana smoke in the car but there may have been the smell of burning oil caused by an oil leak; he did not see the deputy recover a small bag from under the front seat but he did see him with a small bag of something that appeared to resemble marijuana; both of the windows were down.

At the jury trial both deputies testified. Deputies Wilber and Kusch were driving on Foster Bridge when they saw a 1957 Pontiac coming from the opposite direction; as it passed it accelerated rapidly and in excess of the speed limit; Deputy Wilber then made a U-turn, followed the car which turned left on Priam and clocked it at 40 miles per hour in a 25-mile zone; the Pontiac appeared to be evading them; they stopped the Pontiac about three blocks north of Foster Bridge. Deputy Wilber approached defendant, whose window was down, and advised him to alight from the vehicle; Dunlap also got out of the vehicle at the request of Deputy Kusch; as they did so both deputies detected the odor of marijuana smoke coming from inside the vehicle. Deputy Wilber also noticed the odor of marijuana when he talked to defendant; Deputy Kusch, who had retrieved the cigarette from and arrested Dunlap advised Deputy Wilber Dunlap was under arrest for possession of marijuana, then Deputy Wilber searched the interior of the vehicle finding the contraband whereupon he arrested defendant; during booking he removed Zigzag papers from defendant's person. Deputy Kusch's testimony was the same as that given by him at the preliminary hearing.

Defendant testified that Dunlap was arrested first; subsequently he saw

a deputy remove an object from under the front seat; he did not see the deputy recover the cigarette from Dunlap's jacket which was lying on the front seat; neither he nor Dunlap was smoking marijuana in the car; he did not know that the bag of marijuana and marijuana cigarette were under the seat; the jacket was not his and he did not have Zigzag papers at the time of arrest; the smoke inside the vehicle was caused from burning oil. James Dunlap was called to testify for the defense but he refused to answer any questions on the ground that his answers might tend to incriminate him.

 In support of his contention that recovery of the contraband was the result of an unreasonable search and seizure, appellant relies on *People* v. *Superior Court* (*Kiefer*) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449], and argues that the action of Deputy Kusch in opening the door of the passenger side of the Pontiac and his observations resulting therefrom constituted a search.

*People* v. *Superior Court* (*Kiefer*) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449], does not govern the disposition of this case, for the facts in *Kiefer* are far different. As a highway patrol officer stopped Kiefer for speeding he saw Mrs. Kiefer engage in a series of movements which made it appear to him that she was hiding something. Defendant alighted from the vehicle first, walked toward the officer and acknowledged he had been speeding. The officer then approached the passenger side on which the window was rolled up; he "made no attempt to communicate with Mrs. Kiefer, but immediately opened the car door next to her and looked inside. As he later testified, 'My purpose was . . . several. One was to talk to the passenger and see what had been hidden and I was also concerned about my own safety.' " (P. 811.) He observed marijuana on the floor mat and seat cushion, ordered Mrs. Kiefer out and searched the car. The court held that in the circumstances shown the officer's act of opening the door and looking inside was an unreasonable search within the meaning of the Fourth Amendment. (P. 812.) These circumstances differ from those in the instant case.

First, the court in *Kiefer* doubted that the officer was truly concerned that Mrs. Kiefer might be armed and found that the search was exploratory in nature prompted by general curiosity (pp. 830-831). Deputy Kusch testified that immediately after stopping the Pontiac he asked Dunlap to get out because "there were things that gave me reason to believe that my safety may be in danger." Those "things," he explained, were: it was dark, about 9:10 p.m.; as soon as defendant passed the sheriff's vehicle he rapidly accelerated to 40 miles per hour and his speed became excessive in a residential area (leaving the inference [as concluded by Deputy Wilber]

that defendant was attempting to evade the deputies); they had numerous reports of gang activity and numerous assaults with offensive weapons in that specific area; defendant's vehicle came from the area where gang activity had occurred where offensive weapons "had been used to a great extent, in recent days and weeks"; and the occupants were males about 18 years old—"All of these things brought about the fact that I was going to protect myself and my partner to the best of my ability." He did not, as in *Kiefer,* see Dunlap make any movements and had no reason other than safety to ask him to get out of the car. Unlike in *Kiefer,* the evidence supports the deputy's concern for his own safety as the only reason he requested Dunlap to alight and his good faith in that concern. His act of opening the door was purely precautionary to prevent Dunlap from obtaining a concealed weapon or preparing to use one he might have available (*People* v. *Davis,* 188 Cal.App.2d 718, 722-723 [10 Cal.Rptr. 610]); and his conduct was wholly consistent with this for when he opened the door he positioned himself behind it between the door and the front fender that he would not expose himself to any weapon Dunlap might be carrying and devoted his attention exclusively to Dunlap. Appellant claims Deputy Kusch requested Dunlap to get out of the car for a cursory search for weapons. Perhaps this was the reason but neither deputy mentioned "a cursory search for weapons"; Kusch repeatedly told the court he asked Dunlap to alight because he wanted to protect himself and his partner.[1] While no search for weapons took place before Dunlap's arrest under the circumstances it would have been proper. (*Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.]" (392 U.S. at p. 27 [20 L.Ed.2d at p. 909].) In any event the deputies' request that the occupants get out of the vehicle was proper. ██ "It is well established that when an officer stops a motorist under circumstances which justify his stopping the vehicle, he may properly request its occupant to alight. (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin, supra,* 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Bordwine,* 268 Cal.App.2d 290, 291 [74 Cal.Rptr. 1].) Such a demand is legally justified in order to insure the safety of the officer. (*People* v. *Figueroa,* 268 Cal.App.2d 721, 726 [74 Cal.Rptr. 74]; *Terry* v. *Ohio,* 392 U.S. 1, 10 [20 L.Ed.2d 889, 899, 88 S.Ct. 1868]; *People* v.

---

[1]On cross-examination, Deputy Kusch was asked: "Q You didn't at that time search them or pat them down? A The purpose of them alighting from the vehicle was for our safety, and due to all of the aforementioned things. Q This was for purposes of conducting a cursory search for weapons, is that correct? A It was for our safety, that is correct."

*Adam, supra,* 1 Cal.App.3d 486, 489 [81 Cal.Rptr. 738]; *People* v. *Graves,* 263 Cal.App.2d 719, 731 [70 Cal.Rptr. 509]; *People* v. *Nieto,* 267 Cal. App.2d 1, 3 [72 Cal.Rptr. 764]; see *People* v. *Mickelson, supra.*)" (*People* v. *Nickles,* 9 Cal.App.3d 986, 991-992 [88 Cal.Rptr. 763].)

Second, in *Kiefer,* when the officer opened the door, he immediately looked inside the vehicle. Here Deputies Kusch and Wilber did not look in the vehicle before Dunlap was arrested. This is supported by defendant's own testimony and that of Deputy Kusch that he opened the door, stood behind it between it and the front fender and flashed his flashlight on Dunlap as he emerged from the car at which time he saw in, Dunlap's shirt pocket a marijuana cigarette. At the same time he smelled the "very strong" odor of marijuana smoke (with which he was familiar) and saw smoke rolling out of the vehicle. ". . . where contraband is in plain view of an officer who has the right to be in the position to have that view, it may be seized without a warrant. [Citations.] The term 'in plain view' means open and visible to the naked eye. [Citations.] . . . a search warrant is not necessary when the object itself constitutes contraband [citation] or the shape, design or manner in which a package or container is carried affords reasonable grounds for believing it contains contraband. [Citations.]" (*People* v. *Nickles,* 9 Cal.App.3d 986, 992-993 [88 Cal.Rptr. 763].) It was only after he saw the marijuana cigarette, smelled the marijuana smoke and saw it rolling from the interior of the car that he arrested Dunlap; it was only after Dunlap's arrest that the vehicle was searched.[2] The seizure of the marijuana in the vehicle was valid as the result of the search of the vehicle incident to the lawful arrest of Dunlap.

Citing *People* v. *Andrews,* 14 Cal.App.3d 40, 47-48 [92 Cal.Rptr. 49], for the proposition that it is improper for the prosecutor to attempt by questioning or otherwise to draw adverse inferences from defendant's silence in the face of an accusatory statement, appellant claims the prosecutor committed prejudicial misconduct when he asked him if he said anything when the deputy informed him of the reason for the arrest. This was the last question of a series of three[3] asked defendant on cross-

---

[2]Deputy Kusch testified: "A I retrieved the hand-rolled cigarette and placed the passenger under arrest for violation of state narcotic laws.
"Q Subsequent to that was a search of the vehicle conducted?
"A That is correct."
[3]"Q Did you say anything as he [the deputy] extracted that [package of marijuana] from the seat, or—
"A No, sir.
"Q Well, did you say anything when he placed you under arrest?
"Mr Swank [defense counsel]: Objected to as irrelevant and immaterial.
"Mr. Whelan [deputy district attorney]: Your Honor, I submit that it is not irrelevant. It is very relevant.

examination. To the first, "Did you say anything as he [the deputy] extracted that [package of marijuana] from the seat," he answered, "No, sir," without objection; thus appellant waived any claim of error as to that question. (*People* v. *Fitzgerald,* 56 Cal.2d 855, 863 [17 Cal.Rptr. 129, 366 P.2d 481].) To the second, "Well, did you say anything when he placed you under arrest?" the objection of "irrelevant and immaterial" was interposed and properly overruled, and answered, "No, sir." The objection appellant now advances—that the question was in effect a "comment" by the prosecutor on his silence in the face of accusatory statement—if timely and properly made below would have directed the trial court's attention to his claim, but his objection on the grounds of "irrelevant and immaterial" gave the court no opportunity to rule on the issue; and the burden was on defendant to call it to the court's attention. (*People* v. *Crafts,* 13 Cal.App.3d 457, 460 [91 Cal.Rptr. 563].) Having failed to make a specific timely objection in the trial court on the ground he now advances, appellant is precluded from urging it here. (§ 353, Evid. Code; *People* v. *De Santiago,* 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Ortiz,* 276 Cal.App.2d 1, 6 [80 Cal.Rptr. 469].) To the third question, "Did you say anything when he informed you of the reason for the arrest?" defendant interposed the "Same objection [irrelevant and immaterial]." It was only when the judge discussed the objection with counsel at the bench that he discovered defendant's true objection, and then only after probing defense counsel and the latter finally said the prose-

"THE COURT: Would you read the question back, please.
 "(record read)
"THE COURT: The objection is overruled. You may answer.
"THE WITNESS: No, sir.
"Q BY MR. WHELAN: Did you say anything when he informed you of the reason for the arrest?
"MR. SWANK: Same objection.
"MR. WHELAN: Again, Your Honor, I feel it is very relevant. I am, also, testing his credibility.
"THE COURT: Counsel approach the bench with the reporter.
 "(The following proceedings were had at the bench:)
"THE COURT: Mr. Whelan, is it your theory that the witness may have made some volunteer statements at this time?
"MR. WHELAN: No. No, not at all, Your Honor.
"THE COURT: Has it been established that he has been advised of his Miranda rights?
"MR. WHELAN: No. That hasn't been established either, Your Honor.
"MR. SWANK: It is my intention to make a motion for a mistrial at the appropriate time.
"THE COURT: On what grounds?
"MR. SWANK: On the ground that Mr. Whelan is attempting to establish the defendant's guilt by showing that he was silent in the face of an accusation.
"MR. WHELAN: Well, Your Honor, first of all, I am testing his credibility. He has testified as to what was happening, what was said. 1 think that I have a perfect right to do that, and at this point, he said he didn't say anything."

cutor "is attempting to establish [his] guilt by showing that he was silent in the face of an accusation." Then the objection ("irrelevant and immaterial") was sustained. However, thereafter defendant neither moved to strike the three questions and two answers nor requested an admonition to the jury; he cannot now complain of the alleged misconduct. (*People* v. *Sanchez,* 65 Cal.2d 814, 829 [56 Cal.Rptr. 648, 423 P.2d 800] [revd. on other grounds 70 Cal.2d 562 (75 Cal.Rptr. 642, 451 P.2d 74)]; *People* v. *Hampton,* 47 Cal.2d 239, 241 [302 P.2d 300].) ■ Later, however, defendant moved for a mistrial but the same was denied; we find no abuse of the trial court's discretion in denying the motion. (*People* v. *Ward,* 266 Cal.App.2d 241, 249 [72 Cal.Rptr. 46].) ■ For many of the same reasons we find the motion to have been properly denied, we conclude that any error was harmless beyond a reasonable doubt.

First, the evidence overwhelmingly points to defendant's guilt. The rapid acceleration and excessive speed of defendant's vehicle after observing the deputies supports the inference that defendant was trying to evade them; when the doors were opened they smelled a "very strong" odor of marijuana smoke and observed smoke rolling out of the car; as Deputy Wilber talked to defendant he also noticed the odor of marijuana on him; a bag containing marijuana and a hand-rolled marijuana cigarette were found under the driver's seat; and Zigzag cigarette papers were found on his person. Defendant was the owner and driver of and had direct control over the Pontiac and had constructive ownership and possession of its contents. (*Caughlin* v. *Superior Court,* 4 Cal.3d 461, 465 [93 Cal.Rptr. 587, 482 P.2d 211].) Knowledge of the presence of the contraband in the vehicle and of its narcotic character may be shown by circumstantial evidence. (*Rideout* v. *Superior Court,* 67 Cal.2d 471, 474-475 [62 Cal.Rptr. 581, 432 P.2d 197].) The contraband was secreted under the seat on which defendant had been sitting; defendant had Zigzag papers on his person; he smelled of marijuana smoke and he could not have been in his car in which marijuana smoke rolled out without being aware of it.

Second, while the prosecutor's stated purpose of questioning defendant was to elicit relevant facts and test his credibility, it does not appear from his prior questions and defendant's own testimony that he embarked on a calculated effort to convert defendant's silence into a tacit admission of guilt. The questioning was brief and the court sustained the objection at the first point the proper grounds were brought to its attention. Any inference adverse to defendant the jury might have drawn from the fact defendant did not volunteer information to the officers was not strong. There was no evidence that the deputies questioned him at the time of his arrest and there was no particular reason for him to volunteer any information

to them. In responding to a prior question of the prosecutor, "Did you tell the officer about the mechanical difficulty [oil leak]?" defendant merely answered, "He didn't ask." No evidence shows that at the scene the deputies told defendant they believed the odor and smoke within the car to be marijuana. It was only at the trial the evidence established this. As to the marijuana, since it was not found on his person but in the car in which another person was riding and a marijuana cigarette was found on his passenger, it would not necessarily have been natural for him to explain its presence. In light of the foregoing it is unlikely the jury made an inference adverse to defendant from the questions about his failure to volunteer information to the officers. In light of the foregoing we cannot say that the questioning resulted in a miscarriage of justice which would require a reversal of the judgment. In view of the overwhelming evidence against defendant, there is no reasonable possibility that a different verdict would have been reached had the question not been asked. Accordingly, we are able to declare a belief that it was harmless error beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].)

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.